IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TPF DEEDS, LLC; and PRM INVESTMENT COMPANY,<br><br>          Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>          Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>**GRANTING THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**<br><br>**AND** |
| THE UNITED STATES OF AMERICA,<br><br>          Counterclaim Plaintiff,<br><br>v.<br><br>TPF DEEDS, LLC; and PRM INVESTMENT COMPANY,<br><br>          Counterclaim Defendants. | **GRANTING IN PART AND DENYING IN PART TPF DEEDS, LLC'S AND PRM INVESTMENT COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Case No. 2:13-cv-01116-DN**<br><br>**District Judge David Nuffer** |

In this federal tax lien dispute, TPF Deeds, LLC ("TPF") and PRM Investment Company ("PRM") seek declaratory judgment that certain federal tax liens have been extinguished or do not attach to their respective interests in a piece of real property. For the reasons stated below, the United States' Motion for Summary Judgment[1] is GRANTED, and TPF and PRM's Motion for Summary Judgment[2] is GRANTED IN PART AND DENIED IN PART.

---

[1] United States' Motion for Summary Judgment ("29 Motion"), docket no. 29, filed March 23, 2015.

[2] Plaintiff TPF Deeds, LLC and PRM Investment Company's Motion for Summary Judgment on Their First and Third Causes of Action ("33 Motion"), docket no. 33, filed May 6, 2015.

## UNDISPUTED FACTS

1.      On December 27, 2004, the Internal Revenue Service ("IRS") made a timely and proper assessment pursuant to 26 U.S.C. § 6203 against Ernest Hewlett, with notice and demand for payment sent to Mr. Hewlett, for unpaid federal income taxes for the 1997 tax year, creating a lien upon Ernest Hewlett's property, including after-acquired property.[3]

2.      On August 23, 2005, a Notice of Federal Tax Lien ("NFTL") against Ernest Hewlett in the amount of $1,068,560.44 dated August 17, 2005 was recorded as Entry No. 287694, in the Official Records of Wasatch County, Utah ("Lien No. 1").[4] By the express terms of Lien No. 1, it self-released and operated as a "Certificate of Release" the day after the last day for re-filing of that lien, which was September 19, 2011. Lien No. 1 was not re-filed by the September 19, 2011 deadline.[5]

3.      On August 26, 2005, a NFTL against Ernest Hewlett and Colleen Hewlett in the amount of $3,618.99 dated August 17, 2005 was recorded as Entry No. 287695, in the Official Records of Wasatch County, Utah ("Lien No. 2"). A Certificate of Release of Federal Tax Lien dated January 24, 2013, and recorded February 1, 2013, as Entry No. 386472, in the Official Records of Wasatch County, Utah, released Colleen Hewlett from Lien No. 2 but not Ernest Hewlett.[6] Lien No. 2 correctly spelled the name of each taxpayer.[7]

---

[3] Plaintiff TPF Deeds, LLC and PRM Investment Company's Memorandum in Opposition to Defendant United States of America's Motion for Summary Judgment and in Support of Plaintiffs' Motion for Summary Judgment on Their First and Third Causes of Action ("29 Opposition") at 4, docket no. 32, filed May 6, 2015. TPF and PRM disputed that the lien that "attaches to *all* subsequently acquired property" because "[a] federal tax lien self-releases and operates as a certificate of release the day after the last day for re-filing . . . ." *Id.* For this reason, the language of the undisputed fact as proposed in the 29 Motion has been modified to reflect that a federal tax lien does not create a lien upon *all* after-acquired property (for example, a federal tax lien would not create a lien upon property acquired after the lien expires or "self-releases"), but does in fact create a lien upon after-acquired property. *U.S. v. McDermott*, 507 U.S. 447, 448 (1993) (citing *Glass City Bank v. U.S.*, 326 U.S. 265 (1945)).

[4] 29 Opposition at 19.

[5] *Id.*

[6] *Id.* at 16.

4.      On August 31, 2006, Ernest Hewlett acquired a one-third interest in real property located at 98 N. River Road, Midway, Wasatch County, Utah, and more particularly described as Township 3 South, Range 4 East, Salt Lake Base and Meridian:

Section 35:

Commencing at a point having State Plane Rectangular Coordinates of X:2010325.09 and Y:793753.38 (based on the Lambert Conformal Projection, Utah Central Zone), said point also being North 1941.03 feet and West 463.62 feet and North 00º18'35" East 382.8 feet from the South quarter corner to the point of beginning; thence North 00º18'35" East 80 feet; thence North 86º34'19" East 334.51 feet; thence South 01º49'37" East 100.05 feet; thence West 337.53 feet to the point of beginning.

Tax Serial no. OMI-0471-4, 00-0014-1460.

("Property").[8]

5.      The Property was conveyed by Claud Josiah McLendon III and Patricia S. McLendon, as grantors, to Ernest Hewlett, Colleen Hewlett, and Michael Hewlett, as grantees, via a warranty deed ("McLendon Deed"). The McLendon Deed was recorded on August 31, 2006 at 3:24 p.m. as Entry No. 306938 in the Official Records of Wasatch County.[9]

6.      The purchasers of the Property are listed on the real estate agreement as Michael, Colleen, and Ernest Hewlett.[10]

7.      The final HUD settlement statements also show that the purchasers of the Property are Michael, Colleen, and Ernest Hewlett.[11]

8.      At the moment Ernest Hewlett acquired his interest in the Property, Lien No. 2 attached to that interest.[12]

---

[7] *Id.* at 8.

[8] *Id.* at 4, 13-14.

[9] *Id.* at 11.

[10] *Id.* at 10.

[11] *Id.*

9.      That same day, Ernest Hewlett, Colleen Hewlett, and Michael Hewlett, as grantors, conveyed the Property to Celeste Hewlett, as grantee, via a warranty deed ("Celeste Hewlett Deed"). The Celeste Hewlett Deed was recorded on August 31, 2006 at 3:25 p.m. as Entry No. 306939 in the Official Records of Wasatch County.[13]

10.     On December 1, 2008, a NFTL against Ernest Hewlett in the amount of $117,065.04 dated November 17, 2008 was recorded as Entry No. 342502 in the Official Records of Wasatch County, Utah ("Lien No. 3"). Lien No. 3 indicates that the delinquent taxes on which it is based were assessed in 2008.[14]

11.     On December 1, 2008, a NFTL against Ernest Hewlett in the amount of $809,307.22 dated November 18, 2008 was recorded as Entry No. 342503 in the Official Records of Wasatch County, Utah ("Lien No. 4"). Lien No. 4 indicates that the delinquent taxes on which it is based were assessed in 2007 and 2008.[15]

12.     On December 1, 2008, a NFTL against Ernest Hewlett in the amount of $260,585.31 dated November 18, 2008 was recorded as Entry No. 342504 in the Official Records of Wasatch County, Utah ("Lien No. 5"). Lien No. 5 indicates that the delinquent taxes on which it is based were assessed in 2007 and 2008.[16]

13.     On April 21, 2009, a NFTL against Ernest Hewlett in the amount of $207,535.85 dated April 8, 2009 was recorded as Entry No. 347061 in the Official Records of Wasatch

---

[12] *Id.* at 5. Lien No. 1 also attached to Ernest Hewlett's interest in the Property, but since Lien No. 1 is not at issue the parties did not include Lien No. 1 in this fact.

[13] *Id.* at 11.

[14] *Id.* at 19-20.

[15] *Id.* at 20.

[16] *Id.*

County, Utah ("Lien No. 6"). Lien No. 6 indicates that the delinquent taxes on which it is based were assessed in 2008.[17]

14.     On October 20, 2009, SourceOne Financial, Inc. made a load ("Loan") to Celeste Hewlett in the original principal amount of $150,000.00 evidenced by a Trust Deed Note.[18]

15.     To secure payment of the Loan, Celeste Hewlett, as trustor, executed and delivered to SourceOne Financial, Inc., a Trust Deed with Assignment of Rents dated October 20, 2009, naming Celeste Hewlett, as trustor, and SourceOne Financial, Inc., as beneficiary, was recorded against the Property on October 22, 2009, as Entry No. 353524, in Book 1002, at Pages 1596-1600, in the Official Records of Wasatch County, Utah (the "SourceOne Trust Deed").[19]

16.     SourceOne Financial, Inc. ordered a title report from Founders Title when it made the $150,000 loan to Celeste Hewlett in order to ascertain whether there were any outstanding liens against the Property. The title commitment dated October 12, 2009, Order No. F-W16665, did not list any liens, such as federal tax liens, as exceptions. SourceOne Financial, Inc. relied upon the title commitment, and, without actual knowledge of any federal tax liens or other liens, closed the loan with Celeste Hewlett.[20]

17.     On November 2, 2009, Source OneFinancial, Inc., executed and delivered to TPF Deeds, LLC, for valuable consideration, an Assignment of Trust Deed dated November 2, 2009, in which SourceOne Financial, Inc. assigned to TPF Deeds, LLC, a 69.333% undivided beneficial interest in the SourceOne Trust Deed and the indebtedness secured by the SourceOne

---

[17] *Id.*

[18]*Id.* at 16.

[19] *Id.*

[20]*Id.* at 16-17.

Trust Deed, was recorded November 5, 2009, as Entry No. 353901, in Book 1003, at Page 1390, in the Official Records of Wasatch County, Utah (the "Assignment").[21]

18.     Celeste Hewlett defaulted on the Loan and a nonjudicial foreclosure action was instituted.[22]

19.     On June 28, 2011, a Trustee's Deed was recorded as Entry No. 370298, in Book 1037, at Pages 516 to 518, of the Official Records of Wasatch County, Utah, in favor of TPF Deeds, LLC (as to an undivided 69.333% interest) and SourceOne Financial, Inc. (as to an undivided 30.677% interest) (the "Trustee's Deed").[23]

20.     On November 23, 2011, SourceOne Financial, Inc. conveyed an undivided 30.667% interest in the Property to PRM Investment Company via a Warranty Deed dated November 23, 2011, and recorded on November 30, 2011, as Entry No. 374376, in Book 1045, at Page 1570 (the "PRM Warranty Deed").[24]

21.     PRM Investment Company did not have actual knowledge of any federal tax liens recorded against the Property prior to acquiring its interest in the Property.[25]

22.     SourceOne Financial, Inc. and TPF Deeds, LLC did not have actual knowledge of any federal tax liens until shortly after the Trustee's Sale of the Property, when SourceOne Financial, Inc. obtained a copy of a title report ordered by a potential buyer of the Trust Deed Note evidencing the $150,000 loan to Celeste Hewlett that showed Lien No. 2.[26]

---

[21] *Id.* at 17.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 18.

23.    Prior to the recording of Lien No. 1, a Deed of Trust in the principal amount of $184,000 dated December 30, 2004, in which the McLendons were named as borrower, Founders Title was named as trustee, and Delta Employees Credit Union was named as beneficiary, was recorded against the Property on January 4, 2005, as Entry No. 278590, in Book 030, at Pages 0320-0332, of the Official Records of Wasatch County, Utah ("First Delta Credit Union Trust Deed").[27]

24.    Prior to the recording of Lien No. 1, a Deed of Trust in the principal amount of $46,000 dated December 30, 2004, in which the McLendons were named as borrower, Stewart Title Company of Utah was named as trustee, and Delta Employees Credit Union was named as beneficiary, was recorded against the Property on January 4, 2005, as Entry No. 278591, in Book 0730, at Pages 0333-0339, of the Official Records of Wasatch County, Utah ("Second Delta Credit Union Trust Deed").[28]

25.    The First Delta Credit Union Trust Deed and the Second Delta Credit Union Trust Deed were paid off in the amount of $181,446.53 and $71,429.79, respectively, on or about August 31, 2006, the same day the McLendon Deed and the Celeste Hewlett Deed were recorded.[29]

26.    A free Grantor/Grantee online search in the Recorded Document Lookup of Wasatch County's public records for the taxpayer's exact name "Ernest Hewlett" (without quotation marks and with no comma) does not reveal the existence of Lien No. 2 or any of the other federal tax liens, including Lien No. 1 and Lien Nos. 3-7.[30]

---

[27] *Id.* at 14.

[28] *Id.*

[29] *Id.* at 14-15.

[30] *Id.* at 18.

27.     A free Grantor/Grantee online search in the Recorded Document Lookup of Wasatch County's public records for "Hewlett Ernest" (without quotation marks and with no comma) results in 2 and 7 pages of documents, respectively.[31]

28.     A free online search of Wasatch County's public records for "Hewlett Ernest" (without quotation marks) in the grantee index reveals the existence of Lien No. 2.[32]

29.     A similar search for "Hewlett" (without the quotation marks) in the grantee index reveals the existence of Lien No. 2.[33]

30.     A free Grantor/Grantee online search in the Recorded Document Lookup of Wasatch County's public records for "Hewlett, Ernest" (without quotation marks but with a comma) does not reveal the existence of Lien No. 2 or any of the other federal tax liens, including Lien No. 1 and Lien Nos. 3-7.[34]

31.     As of March 13, 2015, Ernest Hewlett has unsatisfied federal income tax liabilities for tax year 1997 in the amount of $84,528.99.[35]

32.     Plaintiffs did not acquire any interest in the Property until, at the earliest, November 2, 2009.[36]

33.     The IRS was not given notice of the nonjudicial foreclosure action referenced in paragraph 21 of Plaintiffs' Complaint.[37]

34.     The Wasatch County Recorder's office meets the requirements of 26 U.S.C. §§ 6323(f)(1)(A) and 6323(f)(4)(B).[38]

---

[31] *Id.*

[32] *Id.* at 9.

[33] *Id.*

[34] *Id.* at 18.

[35] *Id.* at 5.

[36] *Id.* at 7.

[37] *Id.*

35.     The identification of Ernest Hewlett on Lien No. 2 as "Ernest Hewlett" exactly matches the identification of Ernest Hewlett on the grantee deed by which he acquired his interest in the Property and on the grantor deed by which he conveyed his interest, since both deeds identify him as "Ernest Hewlett."[39]

36.     Lien No. 2 appeared on the Commitment for Title Insurance in effect at the time Ernest Hewlett acquired his interest in the Property in August of 2006.[40]

37.     Lien No. 2 also appeared on the Commitment for Title Insurance with an effective date of April 30, 2011.[41]

38.     Lien No. 2 also appeared on the Commitment for Title Insurance with an effective date of February 1, 2012.[42]

### DISCUSSION

In its motion for summary judgment, the United States "only seeks: (1) a determination that [Lien No. 2] is superior to Plaintiffs' interests in the subject property; and (2) an order of foreclosure on [Lien No. 2], with the application of no more than one-third of the proceeds to

---

[38] *Id.* at 8. TPF and PRM purport to dispute this fact, but the purported dispute does not address the stated fact. The stated undisputed fact refers to the adequacy of Wasatch County Recorder's office—that it be located "within the State (or the county, or other governmental subdivision) . . . in which the property subject to the lien is situated," 26 U.S.C. § 6323(f)(1)(A), and that the office maintains "an adequate system for the public indexing of Federal tax liens," 26 U.S.C. § 6323(f)(4)(B)—but TPF and PRM allege that an ordinary person cannot use the Wasatch County Recorder's online lookup system to "reveal the existence of Lien No. 2," and therefore the stated undisputed fact is actually disputed. 29 Opposition at 8. However, TPF and PRM's allegations do not create a dispute about whether the Wasatch County Recorder's office is situated in the same county that the Property is located, or that the system used for indexing is inadequate. At most, it creates a dispute about whether the *online lookup system* reveals the existence of "*Lien No. 2*" when typing in "*Ernest Hewlett.*" But that dispute does not exist. *See* Undisputed Fact 26. Further, this does not create a dispute about whether the "Wasatch County Recorder's office meets the requirements of 26 U.S.C. §§ 6323(f)(1)(A) and 6323(f)(4)(B)." Thus, this is treated as an undisputed fact because there is no dispute about whether the Wasatch County Recorder's office meets those requirements.

[39] 29 Opposition at 8.

[40] *Id.* at 9.

[41] *Id.*

[42] *Id.* at 10.

satisfy or partially satisfy Ernest Hewlett's 1997 federal income tax liabilities."[43] The United

States argues Lien No. 2 has priority over Plaintiffs' interests in the Property because it is first in

time.[44] That is, the United States argues that since Lien No. 2 was properly recorded "years

before Plaintiffs acquired their interest"[45] in the Property, Lien No. 2 "has priority over

Plaintiffs' interests" and judgment should be entered in the United States' favor as to Lien No.

2.[46]

      TPF and PRM oppose the United States' motion, contending that the United States "is

not entitled to summary judgment" because Lien No. 2 is invalid.[47] TPF and PRM argue that

Lien No. 2 was not properly filed and indexed such that "a reasonable inspection of the index

will reveal the existence" of the lien.[48] They argue that "a search of the Wasatch County

Recorder's online lookup system using the taxpayer's exact name—"Ernest Hewlett"—as it

appears on the 1997 NFTL, does not reveal the existence of the 1997 NFTL."[49]

      "[E]ven if [Lien No. 2] were valid," TPF and PRM argue, "TPF Deeds and PRM

Investment would be entitled to equitably subrogate to the Delta Community Credit Union liens

with priority over [Lien No. 2] that were satisfied in the amount of $252,876.32 from Celeste

Hewlett's purchase funds when she acquired the [P]roperty on August 31, 2006."[50] TPF and

PRM further argue that Lien No. 2 "could only attach to the equity, if any, in the property

---

[43] 29 Motion at 3-4.

[44] *Id.* at 7-8.

[45] *Id.* at 8.

[46] *Id.* at 3, 14.

[47] 29 Opposition at 2.

[48] *Id.* (citing 26 U.S.C. § 6323(f)(4)).

[49] 29 Opposition at 2.

[50] *Id.* at 3.

beyond $252,876.32, and only Ernest Hewlett's one-third interest in that equity."[51] TPF and PRM also oppose any forced sale of the Property.[52]

Concurrently with its memorandum in opposition to the United States' motion for summary judgment, TPF and PRM filed a motion for summary judgment of their own.[53] TPF and PRM seek a declaration that (1) "Lien No. 1 has been extinguished and is wholly ineffective as a lien upon or encumbrance against the Property[;]"[54] (2) TPF and PRM's "estate, right, title, and interest in and to the Property is quieted as against the USA relating to or arising under Lien Nos. 1 through 7, and that Lien Nos. 1 through 7 do not attach to nor in any way affect the [P]roperty or Plaintiffs' interests in the [P]roperty[;]"[55] and, alternatively, that (3) "at most the delinquent taxpayer owned only a one-third undivided interest in the Property to which any federal tax lien could attach, and that Plaintiffs are entitled to declaratory judgment that their predecessor was equitably subrogated to (*i.e.*, acquired the priority position of) Delta Community Credit Union . . . , and that as a result, . . . [any tax lien] can only attached [sic] to the equity, if any, in the Property beyond $252,876.32, and only the delinquent taxpayer's one-third interest in that equity."[56]

The United States opposes TPF and PRM's motion, arguing that "[t]he undisputed facts compel entry of summary judgment in the government's favor."[57] The United States reiterates the points it raised in its motion for summary judgment—that Lien No. 2 has priority over

---

[51] *Id.*

[52] *Id.*

[53] 33 Motion.

[54] *Id.* at 3.

[55] *Id.* at 3-4.

[56] *Id.* at 4.

[57] United States' Response to Plaintiffs' Motion for Summary Judgment and Reply to Plaintiffs' Response to United States' Motion for Summary Judgment ("33 Opposition") at 2, docket no. 34, filed June 8, 2015.

Plaintiffs' interests in the Property,[58] that Plaintiffs' are not entitled to equitable subrogation,[59] and forced sale of the Property is appropriate to satisfy Lien No. 2.[60] The United States stipulates to judgment as to Lien Nos. 1, 3, 4, 5, 6, and 7:

> The United States does not oppose Plaintiff's motion for summary judgment regarding what Plaintiffs term Lien Nos. 1 and 3-7. As noted in the United States' counterclaim and motion for summary judgment, the government only contends that Lien No. 2, or the 1997 Lien, has priority over Plaintiffs' interests in the subject property. Accordingly, the United States does not address Plaintiffs' "Statement of Additional Elements and Material Facts" relating to these liens, nor Plaintiffs' arguments concerning these liens. *Rather, the United States stipulates that judgment may be entered declaring that Lien Nos. 1 and 3-7 are not effective against the [P]roperty.*[61]

### Motion for Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[62] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[63] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[64] The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[65]

---

[58] *Id.* at 2.

[59] *Id.* at 2-3.

[60] *Id.* at 18.

[61] *Id.* at 3 (emphasis added, citations omitted).

[62] Fed. R. Civ. P. 56(a).

[63] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[64] *Id.*

[65] *Id.* at 670-71.

### The 33 Motion Is Granted in Part

Because the United States stipulates to judgment that Lien Nos. 1, 3, 4, 5, 6, and 7 are not effective against the Property, TPF and PRM's request that (1) "Lien No. 1 has been extinguished and is wholly ineffective as a lien upon or encumbrance against the Property"[66] is GRANTED. Likewise, TPF and PRM's request that (2) TPF and PRM's "estate, right, title, and interest in and to the Property is quieted as against the USA relating to or arising under Lien Nos. [1, 3, 4, 5, 6, and 7], and that Lien Nos. [1, 3, 4, 5, 6, and 7] do not attach to nor in any way affect the [P]roperty or Plaintiffs' interests in the [P]roperty"[67] is GRANTED.

Thus, the only remaining question in the 33 Motion is regarding *Lien No. 2*. The question is whether TPF and PRM's "estate, right, title, and interest in and to the Property is quieted as against the USA relating to or arising under [Lien No. 2], and [whether Lien No. 2] do[es] not attach to nor in any way affect the [P]roperty or Plaintiff's interests in the [P]roperty."[68] If Lien No. 2 does attach to or affect the Property or Plaintiff's interests in the Property, TPF and PRM's alternative argument must be addressed with regard to Lien No. 2, which is that (3) "at most the delinquent taxpayer owned only a one-third undivided interest in the Property to which any federal tax lien could attach, and that Plaintiffs are entitled to declaratory judgment that their predecessor was equitably subrogated to (*i.e.*, acquired the priority position of) Delta Community Credit Union . . . , and that as a result, . . . [any tax lien] can only attached [sic] to the equity, if any, in the Property beyond $252,876.32, and only the delinquent taxpayer's one-third interest in

---

[66] 33 Motion at 3.

[67] *Id.* at 3-4.

[68] *Id.*

that equity."[69] Because these questions are substantially similar to the questions raised in the 29 Motion, discussion and resolution of these questions will take place in the following subsection.

### The 29 Motion is Granted

In the 29 Motion, the United States seeks (1) a determination that Lien No. 2 is superior to Plaintiffs' interests in the subject property; and (2) an order of foreclosure on Lien No. 2, with the application of no more than one-third of the proceeds to satisfy or partially satisfy Ernest Hewlett's 1997 federal income tax liabilities.[70] For the reasons stated below, the 29 Motion is GRANTED.

### *Lien No. 2 Attaches to the Property*

If a person fails to pay federal taxes that have been properly assessed, "the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."[71] "[T]he lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied . . . ."[72] In *United States v. McDermott*,[73] the U.S. Supreme Court explained that §§ 6321 and 6322 create "a lien in favor of the United States on all real and personal property belonging to the [taxpayer], . . . including

---

[69] *Id.* at 4.

[70] 29 Motion at 3-4.

[71] 26 U.S.C. § 6321.

[72] *Id.* § 6322.

[73] *U.S. v. McDermott*, 507 U.S. 447 (1993).

after-acquired property[.]"[74] A federal tax lien attaches, or "perfects," under an "after-acquired-property provision" when the taxpayer acquires the property.[75]

Here, it is undisputed that on December 27, 2004 the United States made a timely and proper assessment against Ernest Hewlett for unpaid federal income taxes for the 1997 tax year.[76] This assessment created a lien upon Ernest Hewlett's property, including after-acquired property, pursuant to §§ 6321 and 6322 and *McDermott*.[77] It is undisputed that on August 31, 2006, Ernest Hewlett acquired a one-third interest in the Property.[78] Therefore, the federal tax lien against Ernest Hewlett created in December 2004 attached to Ernest Hewlett's one-third interest in the Property when Hewlett acquired it on August 31, 2006. The next question is whether the lien has priority over TPF's and PRM's interests in the Property.

### *Lien No. 2 Has Priority over TPF and PRM's Interests in the Property*

A "federal tax lien is ordinarily dated, for purposes of 'first in time' priority against § 6323(a) competing interests, from the time of its filing, regardless of when it attaches to the subject property."[79] A "§ 6323(a) competing interest" includes various interest holders, including purchasers.[80]

It is undisputed that Lien No. 2 was filed with the Wasatch County Recorder's office on August 26, 2005.[81] It is undisputed that TPF acquired its interest in the Property on November 2,

---

[74] *Id.* at 448 (citing *Glass City Bank*, 326 U.S. 265).

[75] *McDermott*, 507 U.S. at 453.

[76] 29 Opposition at 4.

[77] *McDermott*, 507 U.S. at 448.

[78] 29 Opposition at 4.

[79] *McDermott*, 507 U.S. at 454.

[80] 26 U.S.C. § 6323(a).

[81] 29 Opposition at 8.

2009,[82] which interest was recorded on November 5, 2009.[83] It is undisputed that PRM acquired its interest in the Property on November 23, 2011, which interest was recorded on November 30,2011.[84] Therefore, Lien No. 2 was recorded or "filed" over four years before TPF acquired its interest in the Property and over six years before PRM acquired its interest in the Property. According to the United States, "first in time is the first in right,"[85] so "[t]hat should end the matter."[86] But that is not the end of the inquiry. A notice federal tax lien must be properly filed in accordance with 26 U.S.C. § 6323 in order to be valid.

Section 6323 provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor *until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary*."[87] In other words, the IRS must properly record its lien pursuant to 26 U.S.C. § 6323(f) for it to be valid against other interest holders.

Subsection (f) contains two main requirements for recording notices of federal tax liens against real property: first, the notice of lien must be filed in the proper place, and second, notice of the lien must be filed such that a "reasonable inspection" will reveal it.[88] Regarding the first requirement, subsection (f) provides that under state law and in the case of real property, notice of a lien must be filed "in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is

---

[82] *Id.* at 17.

[83] *Id.*

[84] *Id.*

[85] 29 Motion at 8 (quoting *U.S. v. New Britain*, 347 U.S. 81, 85 (1954)).

[86] 29 Motion at 8.

[87] 26 U.S.C. § 6323(a) (emphasis added).

[88] *Id.* § 6323(f).

situated[.]"[89] TPF and PRM do not argue that the Wasatch County Recorder's office was an improper place to record Lien No. 2. In fact, TPF and PRM state that the appropriate place to file a Federal tax lien against the Property is the Wasatch County Recorder's office.[90] Thus, Lien No. 2 was filed in the proper place.

Second, if "under the laws of the State in which the real property is located, a deed is not valid as against a purchaser of the property who (at the time of purchase) does not have actual notice or knowledge of the existence of such deed unless the fact of filing of such deed has been entered and recorded in a public index at the place of filing in such a manner that a reasonable inspection of the index will reveal the existence of the deed" and "there is maintained (at the applicable office under paragraph (1)) an adequate system for the public indexing of Federal tax liens," the notice of lien must be "entered and recorded in the index . . . in such a manner that a reasonable inspection of the index will reveal the existence of the lien."[91]

TPF and PRM argue that Lien No. 2 fails this second requirement, but the United States argues that TPF and PRM "have not even established that [the second requirement] is applicable in this case."[92] The United States argues that the second requirement "only applies if Utah's recording statutes require that a deed must be *indexed* in the appropriate manner in order to be valid against a subsequent purchaser of the property without actual notice."[93] Since "Utah is a race-notice jurisdiction,"[94] the United States argues, "Utah does not use the time of appropriate

---

[89] *Id.* § 6323(f)(1).

[90] Complaint ¶ 33 ("[A] federal tax lien is not valid against any purchaser or holder of a security interest until notice of the tax lien . . . has been filed, *which in this case is in the Official Records of Wasatch County, Utah*." (emphasis added)).

[91] 26 U.S.C. § 6323(f)(4).

[92] 33 Opposition at 5.

[93] *Id.* (emphasis in original).

[94] *Id.* at 6 (citing *F.D.I.C. v. Taylor*, 267 P.3d 949, 960-61 (Ut.App. 2011); Utah Code § 57-3-102 (2010)).

indexing to determine priority, but the time of recording," and therefore, the second requirement is inapplicable.[95] The United States cites to legislative history stating that in order for the second requirement to apply, "State law must require public indexing of a deed to be valid against a purchaser of the property who does not have actual notice or knowledge."[96] "[S]ubsection 4 of § 6323(f) [which describes the second requirement] only applies to those few jurisdictions in which the significant time for priority purposes is when a document is adequately indexed, as opposed to when it is adequately filed."[97]

The United States appears to be correct in its argument that the second requirement of § 6323, found in subsection (f)(4), is not applicable under Utah state law. If that is the case, Lien No. 2 meets the requirements of § 6323 because it is filed in the proper place, and it is therefore valid against other interest holders. This would mean that Lien No. 2 would have priority over TPF and PRM's interests in the Property because it was recorded "first in time"—more than four years before either TPF or PRM obtained an interest in the Property. Accordingly, it would be "first in right." However, there is no need to determine whether the second requirement contained in § 6323(f)(4) applies in this case because even if it does, Lien No. 2 satisfies its requirements.

Subsection (f)(4) requires a notice of lien to be "entered and recorded in the index . . . in such a manner that a reasonable inspection of the index will reveal the existence of the lien."[98] TPF and PRM argue that Lien No. 2 fails this requirement because "a reasonable search of Wasatch County's free public online database by an ordinary person" would not uncover Lien

---

[95] 33 Opposition at 6.

[96] *Id.* at 5 (citing H.R. 13511, 95th Congress, P.L. 95-600 (cited in *Davis v. U.S.*, 705 F.Supp. 446, 449 (C.D.Ill. 1989))).

[97] 33 Opposition at 6 (citing *Davis*, 705 F.Supp. at 449).

[98] 26 U.S.C. § 6323(f)(4).

No. 2.[99] TPF and PRM argue that "[a] search of recorded documents on Wasatch County's 'Online Document Access' webpage using either 'all criteria' or 'any criteria' and entering the exact name of the taxpayer 'Ernest Hewlett' (whether alone, with single quotes, or with double quotes) as shown on Lien Nos. 2 through 7, or 'Hewlett, Ernest' (without quotes and with a comma, which is how a last name first entry is most commonly written) . . . does not produce any results."[100] TPF and PRM are incorrect.

It is undisputed that a free Grantor/Grantee online search in the Recorded Document Lookup of Wasatch County's public records for "Hewlett Ernest" (without quotation marks and with no comma) results in 2 and 7 pages of documents, respectively.[101] It is also undisputed that a free online search of Wasatch County's public records for "Hewlett Ernest" (without quotation marks) in the grantee index reveals the existence of Lien No. 2.[102] It is also undisputed that a similar search for "Hewlett" (without the quotation marks) in the grantee index reveals the existence of Lien No. 2.[103]

As the United States points out, "[a] reasonable searcher would not simply type in 'Ernest Hewlett' or 'Hewlett, Ernest,' receive 0 results, and cease all efforts."[104] Instead, the United States explains, "[a] reasonable searcher would understand that there must be at least 1 result on the grantee index for Mr. Hewlett—the grantee deed that was causing the searcher to search for his name in the first place—and would inquire further or experiment with other combinations, or

---

[99] 29 Opposition at 24.

[100] *Id.* at 24.

[101] *Id.* at 18.

[102] *Id.* at 9.

[103] *Id.* at 9.

[104] 29 Motion at 11.

use just his last name, until she had at least found that grantee deed."[105] "And once she found

that deed, she would also find [Lien No. 2]."[106] The United States is correct. Lien No. 2 was

"entered and recorded in the index . . . in such a manner that a reasonable inspection of the index

will reveal the existence of the lien."[107] Other title insurance companies appear to have found

Lien No. 2,[108] and the fact that TPF and PRM did not have actual knowledge of Lien No. 2 is not

grounds for invalidating Lien No. 2.

      Even so, TPF and PRM argue that summary judgment should not be granted in favor of

the United States because case law shows that the issue of reasonableness should be decided "in

favor of subsequent purchasers."[109] However, the cases TPF and PRM use to support their

argument do not provide the support TPF and PRM need. Each of the cases cited by TPF and

PRM are non-binding authority and, more importantly, each of the cases fails to support TPF and

PRM's argument.

      *Crystal Cascades* involved a situation where the IRS filed a notice of federal tax lien in

the real property records of Clark County, Nevada against a corporation.[110] Instead of filing the

NFTLs as "Crystal Cascades Civil, LLC," which was the "name registered with the Nevada

Secretary of State," the IRS filed the NFTLs under "Crystal Cascades, LLC, a corporation."[111]

The Ninth Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's decision that "a

search of the real property records in Clark County, Nevada using [a] debtor's exact legal name

constituted a reasonable inspection within the meaning of IRC § 6323(f)(4)(A)" and that

---

[105] *Id.* at 11.

[106] *Id.*

[107] 26 U.S.C. § 6323(f)(4).

[108] *See* Undisputed Fact Nos. 36-38.

[109] 29 Opposition at 23 (quoting *Crystal Cascades Civil, LLC v. U.S.*, 415 B.R. 403, 412 (B.A.P. 9th Cir. 2009)).

[110] *Crystal Cascades*, 415 B.R. at 406.

[111] *Id.*

"[b]ecause an exact-name search would not have revealed the tax liens," the court ruled against the IRS.[112] This is not the same situation presented by the case at bar.

First, this case does not deal with the name of a corporation. It deals with the name of an individual—Ernest Hewlett. Second, it is undisputed that a free online search of Wasatch County's public records for "Hewlett Ernest" (without quotation marks) in the grantee index reveals the existence of Lien No. 2.[113] It is also undisputed that a similar search for "Hewlett" (without the quotation marks) in the grantee index reveals the existence of Lien No. 2.[114] Therefore, typing in Ernest Hewlett's exact name, last name first and without a comma, *would* reveal the existence of Lien No. 2. This is unlike *Crystal Cascades* where the name of the company was incorrect on the NFTL and so typing in the company's correct name, in any combination, would not reveal the existence of the lien. Third, the *Crystal Cascades* court explained that "[t]here is no precise legal standard for what constitutes reasonable inspection under all circumstances. . . . [W]hat constitutes a reasonable inspection . . . is properly analyzed from the perspective of an ordinary prudent person and will vary by locality."[115] Therefore, *Crystal Cascades* does not mandate a certain conclusion because each case varies according to its circumstances. Thus, *Crystal Cascades* does not support TPF and PRM's argument.

TPF and PRM also cite to *VanDolen v. Department of the Treasury*[116] to support their argument that Lien No. 2 could not be found through reasonable inspection. However, *VanDolen* deals with a situation where a taxpayer *changed her legal name*, which has not happened in this case. Moreover, *VanDolen* dealt with the distinct question of whether "filing in the proper

---

[112] *Id.*

[113] 29 Opposition at 9.

[114] *Id.*

[115] *Crystal Cascades*, 415 B.R. at 406-07.

[116] *VanDolen v. Dep't of the Treasury*, 929 F.Supp. 1083 (D.Tenn. 1996).

location under a taxpayer's correct legal name *precludes investigation* into the sufficiency of the notice."[117] The *VanDolen* court denied summary judgment because it could find "no binding authority" prohibiting further investigation into whether the filing was sufficient. The undisputed facts here show that the identification of Ernest Hewlett on Lien No. 2 as "Ernest Hewlett" exactly matches the identification of Ernest Hewlett on the grantee deed by which he acquired his interest in the Property and on the grantor deed by which he conveyed his interest, since both deeds identify him as "Ernest Hewlett."[118] There is no argument that Ernest Hewlett changed his legal name, and therefore *VanDolen* is dissimilar.

The last case TPF and PRM cite is a county court case from Pennsylvania.[119] There, the court said "[w]e researched the question of whether the failure to index is fatal to the Federal Lien . . . and found that there is probably no case exactly on point and very little guidance in the cases that touch on the issue."[120] Nevertheless, the Pennsylvania court went on to hold, citing *VanDolen* and § 6323(f)(4), that a "reasonable inspection" must reveal the existence of the lien.[121] The Pennsylvania court explained that since "the Federal Lien . . . was never *indexed* properly"[122] there would be "no need for a jury or other factfinder as the *undisputed* evidence shows that an error by the 'filing officer' . . . resulted in the Federal Lien at issue not being indexed properly even though it had been recorded."[123] The Pennsylvania court did not describe *how* the lien was indexed incorrectly; the court simply said that it must "take notice of the fact

---

[117] *Id.* at 1086.

[118] 29 Opposition at 8.

[119] *In re Condemnation by Redevelopment Auth. of Allegheny County*, No. GD 05-4607, 2009 Pa. D. & C. Dec. LEXIS 109 (July 30, 2009).

[120] *Id.* at *12.

[121] *Id.* at *13-14.

[122] *Id.* at *7 (emphasis in original).

[123] *Id.* (emphasis in original).

that the Federal Lien . . . was never indexed properly . . . ."[124] Therefore, the Pennsylvania decision does not support TPF and PRM's argument because unlike the Pennsylvania case, there is no stipulation that the Lien No. 2 was indexed incorrectly. Rather, the evidence shows that Lien No. 2 was indexed properly because Lien No. 2 could be found by searching "Hewlett Ernest" or simply "Hewlett." Accordingly, the facts of the Pennsylvania case are distinguishable.

Not conceding the point, TPF and PRM argue that § 6323(f)(4) was designed to protect those "other than the United States," and that the United States "has the burden to ensure that a federal tax lien is not only recorded, but also indexed correctly.[125] The United States argues that this would "effectively impose an unreasonable and extra-statutory burden on the IRS to monitor every recording office in every county in every state to ensure that every NFTL the IRS files comes up under every combination of a taxpayer's name, and, if not, to somehow force those recording offices to change their system so that every combination appears."[126] TPF and PRM retort that they have "never argued that the USA needs to ensure that 'every combination of a taxpayer's name' reveals the existence of a federal tax lien. Rather, TPF Deeds and PRM Investment contend that a search using the taxpayer's exact name as it appears on the [NFTL] must reveal the existence of the lien in order to satisfy Section 6323(f)(4) . . . ."[127]

The United States is correct. "If Congress had intended to impose upon the IRS the duty to investigate what property is owned by a delinquent taxpayer, record the name under which it was acquired, and file a separate notice of tax lien for each such name, it could have done so."[128]

---

[124] Id. (emphasis omitted).

[125] 29 Opposition at 22-23 (citing Allegheny County, 2009 Pa. D. & C. at *16; VanDolen, 929 F.Supp. at 1086).

[126] 33 Opposition at 8-9.

[127] Plaintiff TPF Deeds, LLC and PRM Investment Company's Reply Memorandum in Support of Their Motion for Summary Judgment on Their First and Third Causes of Action ("33 Reply") at 9, docket no. 35, filed June 25, 2015.

[128] U.S. v. Polk, 822 F.2d 871, 874 (9th Cir. 1987).

While the IRS *does* have a duty to update records where it *knows* a taxpayer has changed her name,[129] there has been no name change here, and it is undisputed that a search of the county records under "Hewlett Ernest" or "Hewlett" reveals the existence of Lien No. 2. Failure to find Lien No. 2 is therefore a failure to conduct a reasonable inspection, not a failure of the government to properly record or index the lien.

Because the requirements of § 6323 are met with respect to Lien No. 2, Lien No. 2 is given priority from the date it was filed: August 26, 2005. Since this predates the time TPF and PRM acquired their interests in the Property, Lien No. 2 has priority over TPF and PRM.

### Equitable Subrogation Does Not Apply

Having concluded that Lien No. 2 attached to the Property and has priority over TPF and PRM's interests, the next question is whether TPF and PRM are entitled to equitable subrogation. TPF and PRM argue that they "are entitled to be equitably subrogated to the Delta Community Credit Union liens with priority over Lien Nos. 2 through 7 in the amount of $25,876.32 from the purchase funds when Celeste Hewlett acquired the Property on August 31, 2006."[130] They argue the requirements of § 6323(i) are satisfied because under Utah state law, equitable subrogation occurs "where one who is under no obligation to make payment, and who has no right or interest to protect, pays the debt of another under an agreement, express or implied, that he will be subrogated to the rights of [the] original creditor."[131] TPF and PRM argue that here, Celeste Hewlett was entitled to "equitably subrogate to the position of Delta Community Credit Union's liens with priority over the federal tax liens to the extent of

---

[129] *See id.* at 873-74.

[130] 29 Opposition at 26.

[131] *Id.* at 27 (quoting *Martin v. Hickenlooper*, 59 P.2d 1139, 1141 (Utah 1936)).

$252,876.32, the amount of the purchase funds used to satisfy them."[132] TPF and PRM argue that "[t]his result does not prejudice the USA because Lien No. 2 [would maintain] the same position it occupied before Celeste Hewlett satisfied the pre-existing Delta Community Credit Union liens."[133] Celeste Hewlett's "subrogation rights," TPF and PRM argue, flowed to TPF and PRM when they acquired their interests in the Property after foreclosure.[134]

The United States disagrees, arguing that TPF and PRM "can only derivatively assert the equitable subrogation rights that may have been held by the Hewletts who paid off the Delta Community Credit Union liens,"[135] and that because the Hewletts had notice of Lien No. 2, they had "no right to equitable subrogation" and therefore could not pass on any equitable subrogation rights to TPF and PRM.[136] The United States is correct.

As determined in the previous section, Lien No. 2 was properly recorded. A properly recorded document in Utah "shall, from the time of recording with the appropriate county recorder, *impart notice* to all persons of their contents."[137] Thus, as of the date of recording—August 23, 2005—notice was given of the existence of Lien No. 2. The existence of Lien No. 2 was observed in commitments for title insurance on several transactions involving the Property.[138] It would not be equitable to allow TPF and PRM to have priority over a lien that was recorded appropriately at least four years before either of them acquired any interest in the Property.

---

[132] 29 Opposition at 29.

[133] *Id.* at 29-30.

[134] *Id.* at 30.

[135] 33 Opposition at 12.

[136] *Id.*

[137] Utah Code § 57-3-102(1) (emphasis added).

[138] *See* Undisputed Fact Nos. 36-38.

Moreover, *Martin v. Hickenlooper*,[139] a case TPF and PRM rely on to support their argument in favor of equitable subrogation, explains that a critical consideration in determining whether equitable subrogation applies is whether there is an agreement or promise that the interest holder will take primary position in the priority. After reviewing many cases, the Utah Supreme Court said this: "From our study we may draw the following conclusions . . . (2) That in conventional subrogation [as opposed to legal subrogation] *there must be an agreement*, express or implied, that the lender whose money pays off a lien will have the same status as the lien his money releases to the extent of the debt secured by that lien. . . . ."[140] Here, not only was Celeste Hewlett not a lender (nor were Michael, Colleen, or Ernest Hewlett), there was no agreement that she or any subsequent interest holders would acquire priority position over other interest holders in the chain of title. The United States correctly notes:

> It is one thing for a court to equitably subrogate a subsequent lender that had paid off the mortgage of a prior lender with the expectation that it would accede to the priority of that lender, when that subsequent lender lacked knowledge of some intervening lien [or received a promise that it would stand in priority position]. *It would be another thing altogether for a court to equitably subrogate a delinquent taxpayer or his daughter to the priority of a lender, giving them priority over the federal tax liens that had attached to the property.*[141]

Another important equitable factor is that the United States received no notice of the foreclosure sale by which TPF and PRM acquired their interest in the Property.[142] This failure to notify triggers 26 U.S.C. § 7425, which provides that a foreclosure sale is subject to a federal tax lien "if notice of such lien was filed . . . more than 30 days before such sale and the United States is not given notice of such sale . . . ."[143] Here, it is undisputed that the United States received no

---

[139] *Martin*, 59 P.2d at 1141.

[140] *Id.* at 1151-52 (emphasis added).

[141] 34 Opposition at 15 (emphasis added).

[142] Undisputed Fact No. 33.

[143] 26 U.S.C. § 7425(b)(1).

notice of the foreclosure sale and it has been determined that Lien No. 2 was properly filed. Therefore, the foreclosure sale is subject to Lien No. 2 and equitable subrogation does not apply.

Finally, TPF and PRM's argument that applying equitable subrogation "does not prejudice the USA because Lien No. 2 maintains the same position it occupied before the pre-existing Delta Community Credit Union liens were satisfied,"[144] is rejected. The United States would clearly be prejudiced by subrogation because it would be deprived of the priority status it achieved by filing Lien No. 2 in 2005, before TPF and PRM acquired their interests. This would effectively prevent the United States from exercising its ability to satisfy the lien, which would not further the interests of justice.

Under the circumstances of this case, equitable subrogation does not apply to place TPF and PRM in a higher priority than Lien No. 2.

### *Foreclosure Is Appropriate*

The final issue raised by the parties is whether a forced sale of the Property should occur to satisfy Lien No. 2. The United States argues the Property should be sold,[145] but TPF and PRM disagree.[146] TPF and PRM argue that the statute providing authority to the court to decree a sale is permissive, not mandatory ("*may* decree a sale" not "*must* decree a sale"), and the relevant *Rodgers* factors do not support a forced sale.[147]

The *Rodgers* factors guide a court in deciding whether to force a sale of real property in which a non-liable third party has an interest.[148] The factors include: (1) the economic prejudice to the United States of a partial sale; (2) the third-party's legal expectations that the property

---

[144] 33 Reply at 13.

[145] 29 Motion at 12.

[146] 29 Opposition at 31.

[147] *Id.* (citing 26 U.S.C. § 7403(c)).

[148] *U.S. v. Rodgers*, 461 U.S. 677, 710 (1983).

would be protected from forced sale; (3) the likely prejudice to the third party, both in personal dislocation costs and potential undercompensation of the third party; and (4) the comparative property interest of the delinquent taxpayer and the third party.[149] These factors are not an exhaustive list and should not be used as a "mechanical checklist to the exclusion of common sense and consideration of special circumstances."[150]

After considering the factors and the argument of each of the parties, it is clear that sale of the Property is warranted. A partial sale of the Property likely would result in a lower sale price than if the entire Property is offered for sale. Also, the United States argues that TPF and PRM are not individuals residing at the Property, and therefore there will be no personal dislocation costs. TPF and PRM do not refute this argument. Further, TPF and PRM would be free to bid at a foreclosure auction to protect their interests, or take other action to avoid foreclosure such as selling the Property and paying off Lien No. 2 or paying off Lien No. 2 without sale of the Property. In addition, TPF and PRM did not have a realistic legal expectation when they acquired the Property that the Property would not be subject to forced sale. Lien No. 2 was properly recorded, and a reasonable inspection would have uncovered its existence. Although TPF and PRM are correct that the delinquent taxpayer (Ernest Hewlett) does not have any present possessory interest in the Property, this factor does not tip the scales against foreclosure. Common sense dictates that commercial investing entities who obtain a piece of real property after a federal tax lien has been properly recorded against the property should not be able to bar foreclosure of the property simply because the delinquent taxpayer no longer resides at the property.

---

[149] *Id.* at 709-711

[150] *Id.* at 711.

**CONCLUSION AND ORDER**

The undisputed facts show that Lien No. 2 attached to Ernest Hewlett's one-third interest in the Property and has priority over TPF's and PRM's interest. Further, the parties stipulated that Lien Nos. 1, 3, 4, 5, 6, and 7 are not effective against the Property. Therefore,

IT IS HEREBY ORDERED that the 29 Motion[151] is GRANTED. Lien No. 2 may hereby be foreclosed upon the Property and the Property may be sold pursuant to the Order of Sale which shall issue in 14 days. No more than one-third of the proceeds may be used to satisfy Ernest Hewlett's 1997 federal income tax liabilities.

IT IS FURTHER ORDERED that the 33 Motion[152] is GRANTED IN PART and DENIED IN PART. The 33 Motion is GRANTED as to the inapplicability of Lien Nos. 1, 3, 4, 5, 6, and 7 to the Property, and GRANTED to the extent it seeks a declaration that Ernest Hewlett owned only a one-third undivided interest in the Property to which any federal tax lien could attach. The 33 Motion is DENIED to the extent it requests a declaration that Lien No. 2 did not attach or does not affect the Property or TPF's or PRM's interests in the Property, and is DENIED as to equitable subrogation.

IT IS FURTHER ORDERED that the parties shall file a joint status report within 14 days to outline issues remaining for decision and proposing a schedule to resolve them.

Dated October 9, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[151] United States' Motion for Summary Judgment ("29 Motion"), docket no. 29, filed March 23, 2015.

[152] Plaintiff TPF Deeds, LLC and PRM Investment Company's Motion for Summary Judgment on Their First and Third Causes of Action ("33 Motion"), docket no. 33, filed May 6, 2015.